# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AROGANT HOLLYWOOD,** | : | |
| *Plaintiff*, | : | |
| | : | |
| **v.** | : | **CIVIL ACTION** |
| | : | **NO. 22-2270** |
| **CHRISTOPHER PAUL MARR, JOEL D.** | : | |
| **KEATON, CUBESMART LP, and** | : | |
| **TIMOTHY M. MARTIN,** | : | |
| *Defendants.* | : | |

## <u>MEMORANDUM OPINION</u>

**Scott, J.**                                                                                    **March 28, 2024**

In this action brought under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, and for retaliation for the exercise of ADA rights in violation of Title IV of the ADA, 42 U.S.C. § 12203(b), plaintiff Arogant Hollywood, proceeding *pro se*, alleges that defendant CubeSmart, the owner of a self-storage facility, and its executives, violated his rights to use the facility as a disabled person with urinary incontinence when its employees locked the public bathroom.

The defendants have moved to dismiss the amended complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).[1]  Accepting the facts in the amended complaint as true and drawing all reasonable inferences from them in Mr. Hollywood's favor, the court will grant the defendants' motion because he has failed to state a plausible claim for relief.

---

[1] In addition to moving to dismiss under Rule 12(b)(6), the defendants' motion seeks, in the alternative, to transfer the action to the United States District Court for the Central District of California under 28 U.S.C. § 1404(a) or to compel plaintiff to arbitrate his claims.  *See* Defs.' Mot. to Dismiss Pl.'s First Am. Compl. for Failure to State a Claim or, Alternatively, to Dismiss and Transfer Pl.'s First Am. Compl. and to Compel Arbitration (ECF No. 44) ("Mot. to Dismiss FAC").  Because the Court will grant the motion on Rule 12(b)(6) grounds, the additional grounds raised in the motion are not addressed.

# BACKGROUND

### *Allegations in the First Amended Complaint*

According to the amended complaint,[2] Mr. Hollywood entered into a rental agreement with defendant CubeSmart, the owner of a self-storage facility in Walnut, California ("Walnut facility"), to lease a 5' x 8' x 8' storage cube in the beginning May 18, 2022.[3]  *See* FAC ¶¶ 37, 50–52; June 4, 2022 "Opt-Out document," Ex. 1 to FAC (ECF No. 38 at 33–54); Rental Agreement, attached as Ex. A to Defs.' Mot. to Dismiss (ECF No. 44-2) at 2-4 ("Agreement").[4]  Mr. Hollywood and his fiancée, Alison Helen Fairchild, visited his self-storage unit at the Walnut facility regularly between May and June of 2022.  *See* FAC ¶¶ 40–41.

Mr. Hollywood alleges that from Wednesday, "May 18, 2022, until [Sunday,] May 29, 2022, [he] told all employees and managers working at the [Walnut facility] that he suffered from urinary incontinence, which caused him to need to urinate frequently."  *Id.* ¶ 44.  He generally

---

[2] The operative complaint is the First Amended Complaint ("FAC") (ECF No. 38).

[3] Mr. Hollywood alleges that the Walnut facility is open to the public, a place of public accommodations, and a business establishment.  FAC ¶ 42.

[4] Although Mr. Hollywood failed to attach a copy of the Agreement to his complaint, courts "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White Consolidated Industries, Inc.,* 998 F.2d 1192, 1196 (3rd Cir. 1993) (citations omitted).  Such documents include those that are "*integral to or explicitly relied upon* in the complaint."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) (emphasis in original)).  Here, the Agreement is integral to Mr. Hollywood's claims, and the FAC refers to the Agreement several times.  For example, Mr. Hollywood alleges that he "sent a detailed opt-out of legal arbitration document to Cubesmart's registered agents in California, Delaware, and Pennsylvania."  *See* FAC ¶ 37.  In his "Opt-Out" document, which he attaches as Exhibit "1" to the FAC, he refers to the Agreement and quotes the arbitration provision in it.  *See* FAC, Ex. 1 (ECF No. 38 at 49) ("In Cubesmart's agreement with Arogant Hollywood, Section (m) states the following: 'The arbitration may be conducted in person, through the submission of documents, by telephone or online. . . .'").  The FAC contains other references to the Agreement.  *See* ¶ 50 (alleging that CubeSmart and its managers "violat[ed Mr.] Hollywood's ADA rights by locking the restroom and terminating his lease"); ¶¶ 51, 52 (alleging that CubeSmart retaliated against Mr. Hollywood by placing a "red overlock on [his] Cubesmart Walnut, CA self-storage unit, D293, while Hollywood was still current on his rent.").  Thus, the court may consider the Agreement attached to the defendants' motion in ruling on their motion to dismiss under Rule 12(b)(6).

alleges that in that same time period, "Cubesmart employees and managers intentionally kept the [Walnut facility] ADA public bathroom locked, especially on Sundays." *Id.* ¶ 45.

Mr. Hollywood avers somewhat more specifically that on Sunday, May 29, 2022, after he found that the bathroom was locked, he called the phone number for CubeSmart's national headquarters customer service center, and told the customer service representative that the managers and employees of the Walnut facility "were intentionally keeping the . . . restroom locked." *Id.* ¶ 46. He then "demanded," through the customer service representative, that the Walnut facility "management immediately open the facility's ADA restroom." *Id.* ¶ 47. When the customer representative told him that the Walnut facility manager was "refusing to open the public restroom," Mr. Hollywood informed him that he "would sue Cubesmart for violating his ADA rights." *Id.*

At 6:00 pm that night, Mr. Hollywood called the home telephone number of CubeSmart's President and CFO, defendant Christopher Marr. *Id.* ¶¶ 28, 48. When Mr. Marr's wife answered the phone, Mr. Hollywood told her that she and her husband "Christopher would be held liable for Cubesmart Walnut employees violating his ADA rights." *Id.* ¶ 48. Mr. Hollywood then asked Mr. Marr's wife to put her husband on the phone, and when she told him that he was not at home, he asked her for Mr. Marr's mobile phone number, which she refused to give to him. *Id.*

One hour later, at 7:00 pm, Mr. Hollywood called a different phone number, where he reached Mr. Marr. He told Mr. Marr that "his Cubesmart Walnut, California location, and Cubesmart headquarters were violating [his] ADA rights by locking the bathroom during the facility's access hours because Hollywood suffered from urinary incontinence." *Id.* ¶ 49. Mr. Hollywood told him that a few days earlier, he had sent him and several other CubeSmart executives an email notifying them of his complaint about the locked bathroom at the Walnut

facility, but Mr. Marr stated that this was the first time he had heard of any issues occurring at this location.  FAC ¶ 49.  Mr. Hollywood then told Mr. Marr that he "had already been put on notice [by] his email that Mr. Marr would be liable for Cubesmart employees violating Hollywood's ADA and civil rights."  In response, Mr. Marr hung up on him.  *Id.*

At 8:30 pm that night, Mr. Hollywood called the home number of CubeSmart's COO, defendant Joel Keaton, and spoke with him.  *Id.* ¶¶ 29, 50.  He asked Mr. Keaton if he had received his email notifying him of the locked bathroom issue at the Walnut facility, and Mr. Keaton stated that he had.  *Id.* ¶ 50.  Mr. Hollywood then told him that he would sue him for the conduct of the Walnut facility employees and managers, who were violating his "ADA rights by locking the restroom and terminating his lease because Hollywood's woman used the lift to go up to Hollywood's self-storage unit."  *Id.*

Mr. Hollywood alleges that in retaliation for complaining to CubeSmart's customer service department and executives on May 29, 2022 about the Walnut facility managers and employees intentionally keeping the restroom locked, the defendants directed the Walnut facility manager and his district manager to disable Mr. Hollywood's CubeSmart gate code, and to place a red overlock on his self-storage unit.  *Id.* ¶¶ 51–52.  This prevented Mr. Hollywood from being able to access his storage unit, even though he was still current on his rent.  *Id.* ¶¶ 51–52, 54.  These actions were implemented on June 3, 2022, five days after the events of May 29, 2022.  *Id.* ¶¶ 54–55.  Mr. Hollywood also alleges that Mr. Marr and Mr. Keaton "ignored numerous emails sent to them by [him] that warned them of legal action being taken against them based on" the conduct of the Walnut facility employees and managers.  *Id.* ¶¶ 56, 70.

*Claims Asserted in the First Amended Complaint*

Mr. Hollywood asserts three claims.  In Count I of the FAC, Mr. Hollywood avers that the defendants coerced, intimidated, threatened or interfered with the exercise of his ADA rights in violation of Title IV of the ADA, 42 U.S.C. § 12203(b) and 28 C.F.R. § 36.206(a).  He alleges that he "engaged in conduct protected by the ADA, including . . . requesting reasonable accommodations from . . . [the] defendants] and their employees."  FAC ¶ 82.  In Count II, he claims that the defendants' failure to provide reasonable public accommodations to disabled persons suffering from a medical condition of urinary incontinence and from mental health illnesses and disorders was a violation of 42 U.S.C. §§ 12101, 12182(b)(2)(A)(ii), and 12182(b)(2)(A)(iii), and 28 C.F.R. § 36.201(a).  *Id.* ¶¶ 90–98.  Mr. Hollywood contends that as a result of the defendants' violations of the ADA, he suffered "emotional distress, depression, panic attacks, anxiety, insomnia, [and] a complete disruption of his life."  *Id.* ¶¶ 87, 97.

In Count III of the FAC, Mr. Hollywood asserts a claim for negligence.  He claims that the defendants "executed negligence by their deliberate, willful, and intentional tortious actions of conspiring to violate [his] civil rights pursuant to Title III of the ADA by . . . deliberate[ly] caus[ing] emotional and psychological harm to a disabled and mentally ill person.  *Id.* ¶¶ 105, 107.  The defendants' intentional tortious actions included "ignoring numerous emails and personal voicemail messages sent to them by Hollywood that warned them of legal action being taken against them based on their . . . employees and managers [at the Walnut facility] violating Hollywood's constitutional civil rights."  *Id.* ¶ 109.  He claims that as a result of the defendants' "negligence, recklessness, gross negligence, willfulness, and wantonness," he suffered "embarrassment, humiliation, anxiety, depression, a complete disruption of his life, physical pain and suffering, emotional pain and suffering, inconvenience, frustration, and mental anguish."  *Id.*

¶ 115.

For relief for his ADA claims, Mr. Hollywood seeks: compensatory, special (economic), general (non-economic) and punitive damages; costs, expert fees, and attorney's fees; to preliminarily and permanently enjoin the defendants from violating his civil rights at any CubeSmart self-storage facility location in the United States; and a permanent injunction directing the defendants not to discriminate against disabled individuals at their Walnut facility. *Id.* at 27–30.[5]  For relief for his negligence claim, he seeks compensatory, special, general and punitive damages; and medical and hospital expenses. *Id.* at 28–29.

*Procedural History*

In 2019, the United States District Court for the Central District of California declared Mr. Hollywood and his fiancée, Ms. Fairchild, to be vexatious litigants based on the 25 lawsuits they filed in Los Angeles County state court in 2015, the 15 lawsuits they filed in the Central District of California between August 2016 and November 2017, and the six lawsuits they filed in California federal court between February and August of 2018.  *See Hollywood v. Carrows California Fam. Restaurants*, No. 218CV02098JGBGJS, 2019 WL 5589042 (C.D. Cal. Oct. 30, 2019) (adopting Report and Recommendation of Magistrate Judge Gail J. Standish, 2019 WL 6178807 (C.D. Cal. Sept. 17, 2019)), *aff'd*, 840 F. App'x 300 (9th Cir. Mar. 22, 2021).  Because of their vexatious litigant status, the court imposed strict pre-filing requirements, barring them from filing lawsuits without pre-approval.  *Id.*

In the Report and Recommendation, the court noted that Mr. Hollywood's allegations

---

[5]  The only remedies provided for violations of Title III of the ADA are injunctive relief, attorney's fees, and costs.  42 U.S.C. § 12188(a)(1); *Ramsay v. Nat'l Bd. of Med. Examiners*, 968 F.3d 251, 262 (3d Cir. 2020); *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002).

against self-storage facilities were not new.  Specifically, the court described the complaints that

he and Ms. Fairchild filed in California state court as following a distinct pattern, where

> the plaintiffs are somewhere (such as a coffee house or restaurant *or self-storage building* or store or public street or motel or other rental lodging) and Hollywood's behavior and threats results in an antagonistic situation – which he just happens to record with his GoPro or other device – and which in turn typically leads to police being summoned and Hollywood being detained and sometimes arrested.  At times, these encounters stem from Hollywood taking offense (purportedly on Fairchild's behalf) at something that has occurred, and at other times, they stem from Hollywood taking personal offense at something innocuous or among the routine incidents of life.  The common theme, however, is that something happens that Hollywood does not like, or someone behaves in a manner he dislikes, and he reacts with outrage, anger, insults, and threats, including threats to sue.

*Hollywood v. Carrows California Fam. Restaurants*, 2019 WL 6178807, at *7 (emphasis added).

Additionally, the court noted that Mr. Hollywood's federal filings had a "twist," in that he and Ms.

Fairchild

> added allegations of racial and disability discrimination to the same and/or same types of allegations they made in the state courts – in many instances, to the same claims and actions they filed in the [Los Angeles County Superior Court]– in an ill-disguised effort to manufacture federal jurisdiction over their previously-made state claims.

*Id.*

Mr. Hollywood filed this action on June 8, 2022.  *See* ECF No. 1.  The defendants filed a

motion to dismiss the complaint and a motion to compel arbitration on August 15, 2022.  *See* ECF

Nos. 23, 24.  On October 11, 2022, Mr. Hollywood filed his First Amended Complaint.  On

October 24, 2022, the defendants filed their motion to dismiss the FAC.  *See* ECF No. 44.[6]

---

[6] The defendants contend that the allegations in the FAC follow the same pattern as those in Mr. Hollywood's numerous  complaints previously filed in California state and federal court.  They surmise that he filed his complaint in this court in order to "elude" the strict pre-filing requirements imposed on him

On November 10, 2022, defense counsel informed the Court that they learned that Mr. Hollywood was incarcerated.  Consequently, on November 18, 2022, the Court stayed this matter. On January 19, 2023, defense counsel informed the Court that Mr. Hollywood had been released from prison on January 14, 2023.  On January 27, 2023, Mr. Hollywood informed the Court that he was returned to custody from January 18 through 21, 2023, and asked for a thirty-day extension to respond to the defendants' motion.  On that same day, the Court lifted the stay and granted the plaintiff's request for an extension, making his response due March 2, 2023.  *See* ECF No. 48.  Mr. Hollywood failed to file a response.  On June 29, 2023, the Court ordered him to file a response to the defendants' motion by July 7, 2023 or the motion would be considered unopposed.  *See* ECF No. 50.  Again, Mr. Hollywood failed to file a response.  On November 15, 2023, Mr. Hollywood filed another request for an extension of time to respond to the motion, asserting that he had returned to prison on February 21, 2023, was released from custody on October 17, 2023, and had a large felony criminal appeal due on December 15, 2023.  *See* ECF No. 51.  On November 30, 2023, the Court granted his request to have until January 4, 2024 to file his response to the defendants' motion.  *See* ECF No. 52.  Mr. Hollywood did not file a response.  On January 23, 2024, defense counsel informed the Court that he had received a voice mail message from Mr. Hollywood the day before, which call may have been made and/or forwarded by someone else on his behalf or made directly from a jail, in which he stated that he was in custody and had been since December 11, 2023.  Mr. Hollywood also told counsel that he had a hearing scheduled for February 2, 2024 and that if the charge against him was not dismissed at the hearing, he would be sent to prison for a probation violation.

---

by state and federal courts in California because of his vexatious litigant status.  *See* Mem. of Law in Support of Mot. to Dismiss FAC at 2–3.

## LEGAL STANDARDS

*Standard of Review on a Motion to Dismiss*

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor.  *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).  Additionally, a *pro se* plaintiff's pleadings must be considered deferentially, affording him the benefit of the doubt where one exists.  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (citing *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).  This means the court must construe a *pro se* complaint "liberally . . . . apply[ing] the relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala*, 704 F.3d at 244).  Nevertheless, the plaintiff must allege facts necessary to make out each element of each claim he asserts.  *Mala*, 704 F.3d at 245; *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 563 n.8).  A conclusory recitation of the elements of a cause of action is not sufficient.  *Id.*

*Standard for an Unopposed Motion to Dismiss*

Under Local Rule 7.1(c), most motions may be granted as uncontested in the absence of a timely response.  However, the Third Circuit has cautioned that a district court may not grant a Rule 12(b)(6) motion as unopposed and dismiss a complaint without first analyzing the motion on the merits and finding an independent legal basis on which to grant it.  *Wiggins v. MacManiman*, 698 F. App'x 42, 43 (3d Cir. 2017) (quoting *Stackhouse v. Mazurkiewicz,* 951 F.2d 29, 30 (3d Cir. 1991)).  Therefore, although Mr. Hollywood's failure to respond to the motion renders it unopposed, the court will conduct an independent analysis of the merits of the defendants' motion.

## DISCUSSION

*Discrimination Under § 12182 of the ADA*

The purpose of the ADA is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 475 (3d Cir. 2018) (quoting 42 U.S.C. § 12101(b)(1)).  It seeks to "address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101(b)(4).

Title III of the ADA "specifically prohibits discrimination against the disabled in the full and equal enjoyment of any place of public accommodation."  *Mielo*, 897 F.3d at 475 (citing 42 U.S.C. § 12182(a)).  The purpose of Title III

> is "to bring individuals with disabilities into the economic and social mainstream of American life . . . in a clear, balanced, and reasonable manner." H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 99 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 382.  In drafting Title III, Congress intended that people with disabilities have equal access to the array of goods and services offered by private establishments and made available to those who do not have disabilities.  S.Rep. No. 116, 101st Cong., 1st Sess. at 58 (1989).

*Mullen v. Concord Hosp. Enterprises Co., LLC*, No. 2:20-CV-01530-RJC, 2022 WL 295880, at

*4 (W.D. Pa. Feb. 1, 2022) (quoting *Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n*

*of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994)).

　　　Title III provides that "[n]o individual shall be discriminated against on the basis of

disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

or accommodations of any place of public accommodation. . . ." *Matheis v. CSL Plasma, Inc.*, 936

F.3d 171, 176 (3d Cir. 2019) (quoting 42 U.S.C. § 12182(a)).  "Discrimination" under Title III

includes "a failure to make reasonable modifications in policies, practices, or procedures, when

such modifications are necessary to afford such goods, services, facilities, privileges, advantages,

or accommodations to individuals with disabilities. . . ." *PGA Tour, Inc. v. Martin*, 532 U.S. 661,

682 (2001) (quoting 42 U.S.C. § 12182(b)(2)(A)(ii)).  It is also discriminatory in existing "places

of public accommodation" to fail to "remove architectural barriers . . . where such removal is

readily achievable." *Mielo*, 897 F.3d at 475 (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)).

　　　To establish a prima facie case of discrimination under Title III of the ADA, a plaintiff

must prove that: (1) he is disabled, (2) the defendant is a "public accommodation" under Title III

of the ADA, and (3) the defendant "unlawfully discriminated against him on the basis of his

disability by (a) failing to make a reasonable modification that was (b) necessary to accommodate

his disability.  *Matheis*, 936 F.3d at 175 (citing *Martin*, 532 U.S. at 683 n.38; *Berardelli v. Allied

Servs. Inst. of Rehab. Med*., 900 F.3d 104, 123 (3d Cir. 2018)); *see also Molski v. M.J. Cable, Inc.*,

481 F.3d 724, 730 (9th Cir. 2007).

　　　The allegations in the FAC do not state a claim for discrimination under the ADA.  First,

Title III does not cover the type of claim that Mr. Hollywood asserts here.  His claim is based on

the defendants' conduct in intentionally blocking his access to the bathroom by keeping it locked.

Title III, in contrast, addresses the need for owners of facilities to remove "architectural barriers" to individuals with disabilities.  Unlocking a bathroom door is not removing an architectural barrier.

Indeed, the only cases in this circuit claiming non-compliance with Title III for lack of adequate access to a restroom are based on the physical design or set up of the physical space.  No case is based on denial of access due to locking a person out or blocking use of a facility that was otherwise accessible.  *See, e.g.*, *Mullen*, 2022 WL 295880 (alleging hotel chain violated Title III by failing to provide beds readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, preventing them from accessing other amenities in the room, including the bathroom); *Venus v. Seville Food, LLC*, No. CV 14-2476-BRM-DEA, 2017 WL 2364192 (D.N.J. May 31, 2017) (mother of child who was confined to a stroller alleged that a restaurant's public bathrooms vestibule area, public women's bathroom, and public men's bathroom structure and layout were not compliant with the ADA); *Dunbar v. Zoning Hearing Bd. of City of Bethlehem*, 144 A.3d 219 (Pa. Commw. Ct. 2016) (affirming Zoning Hearing Board's finding that owners of deli were required by Title III to add two handicap accessible bathrooms to their property).

Second, Mr. Hollywood fails to sufficiently allege that the defendants discriminated against him on the basis of his disability.  He claims that the employees and managers at the Walnut facility purposely locked the bathroom to prevent him from gaining access to it.  But by locking the bathroom, the defendants were preventing *all* customers from being able to use the bathroom, not just Mr. Hollywood or other disabled customers.  Congress drafted Title III so that people with disabilities would have "equal access to the array of goods and services offered by private establishments and made available to those who do not have disabilities."  Thus, the defendants

could not have been discriminating against him on the basis of his disability because all patrons were equally denied access to the bathroom when it was locked.

Third, even assuming Title III covers a facility owner who intentionally blocks a disabled patron from using its bathroom, the facts in the FAC are too vague and conclusory to establish that the defendants unlawfully discriminated against Mr. Hollywood on the basis of his disability or that they failed to make a reasonable modification necessary to accommodate his disability.

Mr. Hollywood alleges that on the very first day that he rented the storage unit, and continuing for the next eleven days, he "told all" CubeSmart employees working at the Walnut facility that he suffered from urinary incontinence, causing him to need to urinate frequently. *See* FAC ¶ 44.  He also alleges that starting on the first day of his lease term, and continuing for the next eleven days, CubeSmart employees and managers "intentionally kept" the facility's public bathroom locked, "especially on Sundays."  FAC ¶ 45.

The only date Mr. Hollywood specifically alleges that the bathroom was locked was on May 29, 2022.  He claims that after he found the bathroom was locked, he called CubeSmart's national customer service center, complained that the Walnut facility employees were intentionally keeping the restroom locked, and then demanded that the customer service representative force the Walnut facility manager to immediately open the restroom.  When the customer representative told him that the Walnut facility manager refused to open the restroom, Mr. Hollywood threatened to sue CubeSmart for violating the ADA.

That evening, Mr. Hollywood called Mr. Marr's home phone number, and when his wife answered the phone, Mr. Hollywood threatened to sue her and her husband, and demanded that she give him Mr. Marr's mobile phone number.  One hour later, he reached Mr. Marr at a different number, and threatened to sue him for CubeSmart's employees' violations of his ADA and civil

rights when they locked the bathroom during the facility's access hours because he suffered from urinary incontinence. Also that night, Mr. Hollywood called the home number of CubeSmart's COO, Mr. Keaton, reached him and threatened to sue him for the conduct of the Walnut facility employees and managers.

All of Mr. Hollywood's claims of discrimination are based on events that occurred on a single day, May 29, 2022. Other than the events alleged to have taken place that day, the FAC fails to allege which employees he notified of his urinary incontinence condition, when he notified them, or when the bathroom was locked. Mr. Hollywood cannot sustain a claim for violating Title III based on Walnut facility employees locking the bathroom on one day. Nor can the defendants be liable for failing to address Mr. Hollywood's demand to open the bathroom within hours of his complaint, which was delivered by calling their personal phone numbers on a Sunday evening and accompanied by threats. Without more facts, the court is unable to draw the reasonable inference that the defendants are liable for unlawfully discriminating against Mr. Hollywood on the basis of his disability or that they failed to make a reasonable modification necessary to accommodate his disability based on the misconduct alleged.

At best, the allegations in the FAC are conclusory and vague. At worst, Mr. Hollywood appears to be manufacturing his claims. Other than the allegation that the defendants locked the bathroom on May 29, 2022, the rest of the events that allegedly happened that day were instigated by Mr. Hollywood. The FAC tells a story of someone who sought out as many CubeSmart managers and executives as he could, including calling and emailing them on their personal phones and email addresses, to tell them about his medical incontinence condition, stir up concerns about the bathroom being locked, and threaten to sue them personally and for the acts of others. His claim that defendants Marr and Keaton violated his rights under the ADA because they "ignored"

his emails show that he is provoking a response in order to manufacture an opportunity to engage in litigation.

Mr. Hollywood's misconduct cannot create liability for the defendants under the ADA. It is not a "reasonable modification" to ask the defendants to accommodate Mr. Hollywood's unreasonable demands.

*Retaliation Claim Under § 12203 of the ADA*

Title IV of the ADA prohibits retaliation against anyone for asserting rights under the ADA, and makes it unlawful to coerce, intimidate, threaten, or interfere with anyone exercising his or her rights under the statute. 42 U.S.C. § 12203(a)-(b). The remedies available for a retaliation claim depend on the context. 42 U.S.C. § 12203(c). "[A] plaintiff bringing a retaliation claim involving public accommodations will have the remedies of Title III of the ADA, incorporating the remedies of Title II of the Civil Rights Act." *Datto v. Harrison*, 664 F. Supp. 2d 472, 487 (E.D. Pa. 2009).

To state a claim for retaliation under the ADA, "plaintiffs must show (1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *see also Brown v. City of Tucson*, 336 F.3d 1181, 1186 (9th Cir. 2003).

Mr. Hollywood alleges that in retaliation for complaining to CubeSmart customer service department and executives on May 29, 2022 about the Walnut facility managers and employees intentionally keeping the restroom locked, the defendants directed the Walnut facility manager and

his district manager to disable Mr. Hollywood's CubeSmart gate code, and to place a red overlock on his self-storage unit. This prevented Mr. Hollywood from being able to access his storage unit, even though he was still current on his rent. FAC ¶¶ 51–52. These actions were implemented on June 3, 2022, five days after the events of May 29, 2022. *Id.* ¶¶ 52–55. Mr. Hollywood also alleges that in retaliation for his complaints about the bathroom, Mr. Marr and Mr. Keaton "ignored numerous emails sent to them by [him] that warned them of legal action being taken against them based on" the conduct of the Walnut facility employees and managers. *Id.* ¶¶ 56, 70.

Mr. Hollywood has failed to state a claim for retaliation under the ADA. First, he has not shown that he engaged in protected activity. As explained above, he failed to plead that he was discriminated against on the basis of his disability. When he complained about the Walnut facility employees keeping the bathroom locked, his complaints were made to company executives by calling their homes and personal numbers on a Sunday evening, and threatened them with lawsuits for not getting results within a few hours. This conduct is not protected activity under the ADA.

Nor has Mr. Hollywood plead facts sufficient to show that there was a causal connection between the protected activity and the retaliatory action. Other than the events alleged to have taken place on May 29, 2022, the FAC fails to allege which employees he notified of his urinary incontinence condition, when he notified them, or when the bathroom was locked. The court cannot draw a reasonable inference that the defendants directed the Walnut facility managers to disable Mr. Hollywood's CubeSmart gate code and place a red overlock on his self-storage unit in retaliation for complaining to CubeSmart's customer service department and executives on May 29, 2022, when his complaints were made to company executives by calling their homes and personal numbers on a Sunday evening, and threatening them with lawsuits for not getting

immediate results.  Additionally, Mr. Hollywood's claim that Mr. Marr and Mr. Keaton ignored his emails in retaliation for complaining about the locked bathroom does not make sense.

*Negligence Claim*

To state a claim for negligence under both Pennsylvania and California law, the plaintiff must show that: (1) the defendants had a duty to conform to a certain standard of conduct; (2) the defendants breached that duty; (3) such breach caused the alleged injury in question; and (4) the plaintiff incurred actual loss or damage.  *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011); *Samuels v. Holland Am. Line-USA, Inc.*, 656 F.3d 948, 953 (9th Cir. 2011) (citation omitted).

Mr. Hollywood has failed to state a claim for negligence.  Because he has not stated a claim under the ADA, he has not established how any of the defendants owed him a legal duty to unlock the bathroom for him.  Nor has he alleged how any duty was breached.  Therefore, because Mr. Hollywood has failed to state facts supporting two of the four elements of the tort, the claim will be dismissed.

**CONCLUSION**

The allegations in the FAC are insufficient to state a claim for a violation of Title III of the ADA, 42 U.S.C. § 12182, or for retaliation for the exercise of Mr. Hollywood's ADA rights in violation of 42 U.S.C. § 12203(b).  Similarly, the FAC does not state a claim for negligence. Therefore, the court will grant the defendants' motion to dismiss the complaint under Rule 12(b)(6), and will dismiss all of the plaintiff's claims against them with prejudice.

Because Mr. Hollywood has already had one opportunity to amend his complaint, and any further amendment would be futile, the plaintiff is not granted leave to amend.